## IN

# THE SUPREME COURT

### OF

## PENNSYLVANIA.

---

### MIDDLE DISTRICT—JUNE TERM, 1830.

---

**THOMAS INGHAM and others, heirs of JOSEPH INGHAM, deceased, *against* MASON CRARY and NATHAN BEACH.**

A parol gift of a lot of ground by a father to his married daughter, accompanied by possession and valuable improvements made by the husband at his own expense, vests in him no estate in addition to the freehold which the law allows him in right of his wife.

It is competent to give evidence of what was said previously to the execution of a deed, in order to establish the fact that the grantee received the deed in trust for another.

A certified copy of the docket entry of a suit cannot be received to establish the existence of a former suit pending for the same cause; and if received, the error will not be cured by the instruction of the court in their charge to the jury, to disregard it.

WRIT of error to the Common Pleas of Luzerne county.

This was an action of ejectment brought by *Joseph Ingham* in his life time, against *Mason Crary*, for a house and lot in the borough of Wilkesbarre. *Nathan Beach* was, on motion, admitted to be a co-defendant, being the landlord of *Mason Crary.*

The evidence of the plaintiff's title was, 29th May, 1805, patent to *Jesse Fell*, for five acres and one hundred and fifty-one perches, including the lot in dispute. 3d August, 1805, deed *Jesse Fell* and wife to *Jonas Ingham*, for the lot in dispute; 19th July, 1819, deed, *Jonas Ingham* to *Charles Kinsey;* 6th September, 1821, deed, *Charles Kinsey* to *Joseph Ingham*

*Ethan Baldwin*, Esq. was then called as a witness by the plaintiff, to testify, that an erasure, which appeared in the deed of 19th July, 1819, of *Ingham* to *Kinsey*, was made before its execution; and upon his cross examination said, in substance, that that deed was made for the purpose of giving to *Charles Kinsey*, who was then a citizen of New Jersey, colour of title to the lot in dispute,

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v.* Mason
Crary and Nathan Beach.)

so as to enable him to maintain an ejectment in the Circuit Court
of the United States. The defendants then proposed to ask the
witness, whether he did not then receive directions to bring a suit
in that court, and what he did in pursuance of those directions.
To which the plaintiff objected, that they could not prove the exis-
tence of a suit by parol: the court overruled the objection, and
sealed a bill of exceptions at the request of the plaintiff.

The witness then, in substance said, that he had brought an
ejectment in the Circuit Court in the name of *Charles Kinsey,* for
the lot in controversy.

The defendants then offered in evidence, a certified copy of the
"docket entries" of the suit brought in the Circuit Court of the
United States, for the same lot, to October session, 1819. To which
the plaintiff objected, that it did not purport to be an entire copy of
the record. The objection was overruled and the paper admitted,
to which the plaintiff excepted.

The defendants then offered and stated the testimony of *Jesse Fell,*
to which the plaintiff objected, but the court admitted the evidence,
and sealed a bill at the request of plaintiff.

The witness then said: "Mrs. *Ingham* the wife of *Jonas Ingham,*
about 1804, called on me and said, that she had a legacy left her,
which she wished to lay out for her daughter Mrs. *Perry,* and ap-
plied to me to buy the lot in dispute. We agreed upon the price,
two hundred pounds, and the deed was to be made whenever a
release of the lot could be obtained from a certain mortgage upon
it and other lots. The release was obtained. *Jonas Ingham* was
not present when the agreement was made with Mrs. *Ingham;* but
he and I executed the agreement some time afterwards according
to the terms which she and I made. It was to be purchased for
Mrs. *Perry.* The purchase money was paid with the money of Mrs.
*Ingham* by the hand of *Benjamin Perry,* the husband of Mrs. *Perry.*
I had expected the deed was to be made to Mr. *Perry* or his wife.
*Jonas Ingham* brought to me the release from the mortgage; I then
asked him in whose name the deed was to be made, he said in his
own name: he did not say then it was for Mrs. *Perry;* but he did
say that *Perry* was trading pretty largely, and he did not know how
things might turn out, or something to this effect. *Perry* had his
goods in the shop on the lot when the deed was made by me to
*Jonas Ingham;* he then made a kitchen of the shop and built the
house which is now on the lot; I cannot say whose money he built
it with. *Jonas Ingham* and his family were down while *Perry* was
building." Being cross examined he said, "It seems to me that
both Mr. and Mrs. *Ingham* were present when the deed was exe-
cuted. I do not know that I ever heard *Ingham* say that it was
for his daughter, or where the money was to come from. *Perry*
lived in the house on the lot, about ten years after it was bought;

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v.* Mason Crary and Nathan Beach.

he lived there until it was sold by the sheriff as his property, to *Beach,* and afterwards for some time."

Other testimony was then given by the defendants, which was in substance, that in 1807, *Perry* built the house on the lot now in dispute, that it cost from one thousand five hundred to three thousand dollars. They then exhibited the record of two judgments against *Perry;* the first for about two thousand dollars, and the other for about two thousand five hundred dollars—both of which *Beach* had paid in consequence of a liability so to do, and the judgments were assigned to him. On the first judgment a *fi. fa.* issued, which was levied on this house and lot, which was condemned, and subsequently sold by the sheriff to *Nathan Beach,* the defendant, for one thousand four hundred and eighty-one dollars. Sheriff's deed dated 3d April, 1813.

The plaintiff then gave in evidence the deed of release, before spoken of, of this lot from the mortgage, which was to *Jonas Ingham;* and the receipt for the consideration by the releasor was " received of *J. Ingham,* per *Benj'n. Perry,*" &c.

The court (*Scott,* president,) charged the jury as follows:

" The certificate of the clerk of the Circuit Court of the United States produced in evidence on the part of the defendants, was not evidence of the pendency of a suit for the lot in question in that court at the time this suit was instituted.

" The plaintiff on his part has shown a legal title to the land in question; but the defendants resist a recovery, and claim title under *Benjamin Perry,* as whose property the lot was sold, and who, they allege, was the equitable owner. If the jury believe from the evidence that the land in question was a gift to *Perry,* by *Jonas Ingham* the father of *Perry's* wife; that *Perry* was in possession at the time, or went into possession in pursuance of such gift, and made valuable improvements thereon, and continued in possession up to and after the sale to *Beach,* the defendants cannot now be disturbed: their title must prevail. It has long since been settled in Pennsylvania, that a gift of land, accompanied by possession, and by the donees making valuable improvements thereon, was valid. As to notice of *Perry's* equitable title, the law is, that one who purchases a legal estate, without notice of an equitable interest, takes it discharged of the equity. Notice of an equitable title may be actual or legal: actual notice is where notice in fact has been given: legal notice is where from circumstances there is a violent presumption of actual notice. A clear, unequivocal and undisturbed possession by the equitable owner, is notice to all the world of his claim. A judgment against the equitable owner, whilst so in possession, a *fi. fa.*, levy, condemnation and sale thereon, and the sheriff's deed and acknowledgment thereof to the purchaser amounts to legal notice."

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v.* Mason Crary and Nathan Beach.)

To which opinion the plaintiff's counsel excepted, and the court sealed a bill.

*Conyngham* and *Willetson.* for plaintiffs in error.

The evidence contained in the first bill of exceptions was, in substance, parol proof of the existence of a record which was error. *Vanhorn* v. *Frick*, 3 *Serg. & Rawle*, 282. It was not the best evidence of the fact; the record itself was better.

Second bill. The docket entries of the suit in the Circuit Court were but a part of the record. The record does not purport to be entire, the admission of which in evidence was clearly error. *Vincent* v. *Huff*, 4 *Serg. & Rawle*, 300. 2 *Saun. Plea.* and *Ev.* 17. *Whart. Dig.* 223, *No.* 13, 14. *Edmiston* v. *Scwartz*, 13 *Serg. & Rawle*, 135. *Christine* v. *Whitehill*, 16 *Serg. & Rawle*, 106. *Ferguson* v. *Harwood*, 7 *Cranch*, 410.

When illegal evidence is admitted, the error will not be cured by the direction of the court to the jury to disregard it. *Schaeffer* v. *Critzer*, 6 *Bin.* 430. *Nash* v. *Gilkeson*, 5 *Serg. & Rawle*, 352.

Third bill. The declarations of a wife should not be received in evidence to affect the rights of her husband. 1 *Phil. Ev.* 64. 1 *Bac. Ab.* 497, title *Baron & Feme.* *Webster* v. *M'Gennis*, 5 *Bin.* 235. But the evidence should not have been received for another reason; that all previous conversations and bargainings on the subject were consummated by and merged in the deed. *Cozens* v. *Stevenson*, 5 *Serg. & Rawle*, 422. *Heagy* v. *Umberger*, 10 *Serg. & Rawle*, 342. *Christine* v. *Whitehill*, 16 *Serg. & Rawle*, 106. *Collam* v. *Hocker.* 1 *Rawle*, 108. *M'Williams* v. *Martin*, 12 *Serg. & Rawle*, 269. *Whart. Dig.* 580, No. 10. *Brown* v. *Dysinger*, 1 *Rawle*, 412.

The court assumed the fact of a parol gift by *Ingham* to his son-in-law, or to his daughter, which there was no evidence to support. He never intended to give the lot to *Perry*, and the charge of the court should have been to this effect. *Meth. Epis. Church* v. *Jaques*, 1 *Johns. Chan.* 450. *Lancaster* v. *Doland*, 1 *Rawle*, 231.

The purchaser of a legal title is not effected by an equity of which he has not direct, express and positive notice. *Scott* v *Gallagher*, 14 *Serg. & Rawle*, 333.

*Mallary* and *Greenough,* for defendants in error.

The parol evidence mentioned in the first bill of exceptions, was not offered for the purpose of proving the existence of a suit in the Circuit Court, but to show the real transaction with *Kinsey*, and that he had no real interest in the title, which was made to him *mala fide*, as a citizen of another State, in order to give jurisdiction to that court: and this, to meet the allegation of the plaintiff, that he was an innocent purchaser of the legal title without notice of the equity of *Perry*.

The record does not show the object for which the copy of the docket entries was offered; if therefore it was competent for any

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v* Mason Crary and Nathan Beach.)

purpose, there is no error in its admission. It was offered and received in the midst of the testimony of the witness, who detailed the facts in relation to the execution and delivery of the deed to *Kinsey*, and while the witness was speaking of the object for which that deed was given; it was therefore competent to show the date of that transaction: for a transcript is sometimes evidence for a particular purpose. *Eisenhart* v. *Slaymaker*, 14 *Serg. & Rawle*, 153.

But after all the evidence was given, and the aspect in which the cause went to the jury, there is no point of view in which it can be considered, that the plaintiff was at all prejudiced by that evidence: and if so, this court will not reverse the judgment, even if it was illegally admitted. *Allen* v. *Rostain*, 11 *Serg. & Rawle*, 362. *Brown* v. *Downing*, 4 *Serg. & Rawle*, 498. *Edgar* v. *Boies*, 11 *Serg. & Rawle*, 445.

The rule that the declarations of a wife cannot be given in evidence against her husband, is not applicable here: nor were they offered as mere declarations, but as a part of the *res gesta*, the declarations of one engaged in making the contract for the purchase of the lot: if she had been acting even as the agent of her husband, her declarations would be evidence. *Commonwealth* v. *Eberly*, 3 *Serg. & Rawle*, 9. *Babb* v. *Clemson*, 12 *Serg. & Rawle*, 328.

The law is well settled that a parol gift by a father to a child, accompanied by possession, and the making of valuable improvements, gives a good title. *Syler* v. *Eckert*, 1 *Bin.* 378. This position does not seem to be controverted on the other side, but it is called an equity of which the plaintiffs had not notice; this is not so, for *Perry* was always in possession, which is notice to every one. *Billington* v. *Welsh*, 5 *Bin.* 129. *Harris* v. *Bell*, 10 *Serg. & Rawle*, 44. *Beehman* v. *Frost*, 18 *Johns.* 558.

The opinion of the court was delivered by

GIBSON, C. J.—The plaintiffs claim through a conveyance from their father to *Kinsey*, an inhabitant of Jersey, who obtained the legal title for a valuable consideration, as it is alleged, and without notice of the equitable estate of *Perry* and his wife, which, whatever it may be, is vested, at least for her life, in *Beach*, one of the defendants. To rebut this allegation of a purchase without notice, it was open to the plaintiffs to show that the title was conveyed to *Kinsey* on a secret trust to enable the grantor to institute an ejectment in his name, in the Circuit Court of the United States; and with a view to this the defendants might clearly examine the subscribing witness, who was also the attorney of the parties, not only as to what passed at the execution of the deed, but as to what he himself did in consequence of it; and if it should turn out, as it did here, that he immediately instituted an ejectment in the federal court, on failure of which the premises were reconveyed to the

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v.* Mason Crary and Nathan Beach.

family of the grantor, it would furnish not only competent but satisfactory proof that the original conveyance was intended merely to give colour of jurisdiction to that court; in which state of the fact, it would be without effect as to the title of a third person.

The docket entries in the Circuit Court which were offered, for any thing that appears, to show that another action for the same land was pending when the present suit was instituted, were undoubtedly inadmissible. It expressly appears by the act of authentication, that the whole record was not certified; and perhaps there is in Pennsylvania, a peculiar fitness in rejecting the arbitrary and often inaccurate memoranda and references from the minutes on the docket to the various parts of the record, as evidence of its contents. Even convenience would not be served by relaxing the rule which requires the whole record to be certified, it being as easy to procure the whole as a part; and were any thing less than the whole to suffice, we can readily see what abuses would ensue from selecting particular parts and suppressing the rest. Here the identity of the premises was the fact on which the effect of the record as evidence in the cause essentially depended; and to prove it, an abstract of the description in the declaration was certainly inferior to the description itself. The judge himself became convinced of the incompetence of the record, and directed the jury to disregard it; but such a direction was held in *Sheaffer* v. *Kreitzer*, 6 *Bin.* 431, and *Nash* v. *Gilkeson*, 5 *Serg. & Rawle*, 352, insufficient to repair the consequences of the error.

It is not to be doubted that the evidence to establish the trust, was perfectly competent. It is generally true that previous stipulations merge in the conveyance which is the consummation of the agreement; and this holds between the immediate parties in regard to questions of satisfaction of previous covenants, but not between one of the parties and a third person in regard to collateral matters; else a conveyance of the legal estate would, in every case, rebut the implication of a trust. Mrs. *Ingham*, in the absence of her husband, applies to Mr. *Fell* to purchase the lot in dispute for the benefit of her daughter Mrs. *Perry*. The terms are settled and reduced to writing; and, at the time for executing the contract, her ability to treat is recognized by her husband, who takes the conveyance to himself and not to his daughter, only because he deems it prudent to vest the legal estate in himself, the son-in-law being in trade. Had the gift to the daughter been purely gratuitous, it might have been guarded from the claims of her husband's creditors by the creation of a trust; but her equity arises from an expenditure of money by her husband in pursuance of an understanding by all parties, that the lot with the improvements should be a provision for her; without which the gift would be void. I discover no evidence of a gift to *Perry* himself, in the absence of which the ex-

(Thomas Ingham and others, heirs of Joseph Ingham, deceased, *v.* Mason Crary and Nathan Beach.)

penditure of his money would give him no estate, in addition to the freehold which the law allows him in her right; which, however, is sufficient, even without the birth of a child, (the wife being alive,) to entitle the defendants to a verdict; and should the jury, whose province it is to judge of the intention from the evidence, be satisfied that the gift was to *Perry,* or to him and his wife jointly, the case would certainly be no worse for the defendants. In the admission of this part of the evidence, therefore, and the direction of the judge as to its legal effect, we perceive no error; but for the comparatively unimportant error in admitting the extract of a record, we regret to say the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.